❏ Original        ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.   20-1069M(NJ) |
| Cellular phone assigned telephone number | ) |
| (262) 321-4730, International Mobile | ) |
| Subscriber Identity (IMSI): 311480498110837 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

   See attachment A

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See attachment B

     **YOU ARE COMMANDED** to execute this warrant on or before    November 10, 2020    *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph    .
*(United States Magistrate Judge)*

     ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for   30   days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of    .

Date and time issued:    10/27/2020 10:48 am

*Judge's signature*

City and state:    Milwaukee, WI.      Honorable Nancy Joseph
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. The cellular telephone assigned call number **(262) 321-4730**, with International Mobile Equipment Identity 352022072828963 and International Mobile Subscriber Identity 311480498110837 (the "Target Cell Phone"), whose wireless service provider is Cellco Partnership DBA Verizon Wireless, a company headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless .

## ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless is required to disclose the Location Information to the government. In addition, Cellco Partnership DBA Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Cellco Partnership DBA Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership DBA Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Cellco Partnership DBA Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| Cellular phone assigned telephone number (262) 321-4730, International Mobile Subscriber Identity (IMSI): 311480498110837 | ) ) ) | 20-1069M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a) (1) | See attached affidavit |

The application is based on these facts:

See attached affidavit

❒ Continued on the attached sheet.

❒ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

STEVEN DESCHLER (Affiliate) Digitally signed by STEVEN DESCHLER (Affiliate) Date: 2020.10.27 10:27:56 -05'00'

*Applicant's signature*

Steven Deschler, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: October 27, 2020

*Judge's signature*

City and state: Milwaukee, WI.

Honorable Nancy Joseph

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>  20-1069M(NJ) | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                                       _____
                                                            *Executing officer's signature*

                                                            _____
                                                                 *Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Steven H. Deschler, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(262) 321-4730,** with International Mobile Equipment Identity 352022072828963 and International Mobile Subscriber Identity 311480498110837 (the "Target Cell Phone"), whose service provider is Cellco Partnership DBA Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Detective with the Kenosha Police Department and have been since October 1, 1997.  On May 17, 2017, I was deputized as a Task Force Office with the Drug Enforcement Administration.  I was a member of the Kenosha Drug Operations Group from January 2009 to December 2016 and have held a position in other Speical Investigation Units since January 2003.

3.       As a local and federally sworn law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions,

habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 USC 841 (a) (1), 846  have been committed, are being committed, and will be committed by Ronnie MITCHELL DTO members.  There is also probable cause to believe

2

that the location information described in Attachment B will constitute evidence of these criminal violations **21 USC 841 (a) (1) and 846,** and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

*6.* During December 2019 the Racine County Sheriff Office Metro Drug Unit (MDU) initiated a drug investigation of the Ronnie MITCHELL Drug Trafficking Organization (DTO) in which numerous DTO members are distributing fentanyl, heroin, crack cocaine, Oxycodone pills, and Suboxone strips in Racine, Wisconsin. DEA Special Agents and Task Force Officers and MDU Agents have utilized three different Confidential Sources (CS) to conduct over 70 controlled purchases of fentanyl, heroin, crack cocaine, ecstasy, Suboxone strips, and Oxycodone pills. The three DEA CSs utilized phone number (224) 717-6253, (the first MITCHELL DTO drug phone number), the current MITCHELL DTO drug phone number of (262) 308-3368 and one of the Confidential Sources utilized Ronnie MITCHELL's phone number of **(262) 321-4730** (the **"Target Cell Phone"**), to arrange the purchase of controlled substances. The DTO members work different shifts distributing controlled substances for the MITCHELL DTO throughout the week.

*7.* Based on information from the Confidential Sources, recorded phone calls, and observations during CS' purchases of controlled substances, case agents developed a hierarchy/rank structure in the DTO. Ronnie R. MITCHELL is believed to be the DTO's source of supply. Devereaux A. PATTON was identified as the head of the DTO in Racine, Wisconsin. Stevie L. PATTON Jr., Martiese D. HUDSON, Brian J. EDWARDS, Terry N. MCLAIN, Angela M. BRZINSKI, Menachin O. BROWN, Deshawn T. CHATMAN, Alexander MONETTE, Brian

3

SAUNDERS, April DAVIS, Dawneitha GANT, and Shane TRENTADUE were identified as "runners' and selling the controlled substances for the DTO.

8. Between December 2019 and July 2020, Metro Agents utilized the three Confidential Sources to conduct a minimum of 70 purchases of controlled substances, to include fentanyl, heroin, crack cocaine, ecstasy, Suboxone strips, and Oxycodone pills from MITCHELL DTO members, to include Devereaux A. PATTON, Stevie L. PATTON Jr., Martiese D. HUDSON, Brian J. EDWARDS, Terry N. MCLAIN, Angela M. BRZINSKI, Menachin O. BROWN, Deshawn T. CHATMAN, Alexander MONETTE, Brian SAUNDERS, April DAVIS, Dawneitha GANT, and Shane TRENTADUE. The three Confidential Sources individually called (224) 717-6253, (the first MITCHELL DTO drug phone number) from December 2019 to June 2020, to arrange the purchases of controlled substances. Two Confidential Sources individually called (262) 308-3368, (the new MITCHELL DTO drug phone number) from June 2020 to July 2020 to arrange the purchase of controlled substances from DTO members.

9. In May of 2020, one Confidential Source called Ronnie MITCHELL's phone number of (262) 412-2027 to arrange the purchase of controlled substances.

10. In June of 2020, Racine County Sheriff's Office Metro Drug Unit (MDU) Agent Tom Knaus met up with CS #1. CS #1 told MDU Agent Knaus that s/he had try to call Ronnie MITCHELL's phone number of (262) 412-2027, to setup a future controlled buy, however he did not answer. After Ronnie MITCHELL did not answer his phone, CS #1 called the MITCHELL DTO drug phone number of (224) 717-6253 (the first MITCHELL DTO drug phone number). CS #1 spoke with Martiese HUDSON, a MITCHELL DTO member, and asked for him to have Ronnie MITCHELL give the CS a call. After a couple of minutes, Ronnie

4

MITCHELL did call the CS.  Ronnie MITCHELL instructed the CS to call him at **(262) 321-4730** (the **"Target Cell Phone"**) to arrange for the drug trasactions.

*11.*     Between June 2020 and October 2020, Metro Agents utilized one Confidential Source to conduct a minimum of four purchases of controlled substances, to include heroin (suspected fentanyl) and crack cocaine from Ronnie MITCHELL.  The Confidential Source called **(262) 321-4730,** (the "Target Cell Phone")  from June 2020 to July 2020, to arrange the purchases of controlled substances.  The following details the most recent controlled substance purchases:

　　　　a.  On August 27, 2020, Metro Agents Tom Knaus and Donald Vandervest  met with CS  #1, in order to conduct a Oxycodone pill and heroin (suspected fentanyl) buy in Racine, WI.  The CS called Ronnie MITCHELL at **(262) 321-4730** (the "Target Cell Phone") and arranged to purchase the Oxycodone pills and heroin (suspected fentanyl) from MITCHELL.  During the phone call, MITCHELL stated he had eight Suboxone strips.  Agents Knaus and Vandervest drove CS #1 to Case Avenue and DeKoven Avenue in Racine, WI, the buy location.  At the buy location, the CS entered a maroon Chevrolet Express van and saw Devereaux PATTON was the driver, Ronnie MITCHELL was the front seat passenger, and two unknown people were seated in the back of the van.  The CS gave MITCHELL $1,030 of pre-recorded Metro MDU and MITCHELL gave CS #1 20 30 mg Oxycodone pills and eight Suboxone strips.  MITCHELL asked CS #1 if the white female in the gold minivan gave CS #1 seven halves (half gram bags of heroin).  CS #1 told

5

MITCHELL, "no". MITCHELL directed CS #1 to go to the gold minivan (gold Kia Sedona displaying Wisconsin registration KA7936) and obtain the heroin. The CS met with the driver of the gold van and obtained the heroin (suspected fentanyl). Case agents identified the driver Angela BRZINSKI as the driver of the gold van. Agent Knaus weighed the heroin and it weighed approximately 3.6 grams. Agent Knaus tested a small sample of the suspected fentanyl utilizing a NARK II test kit and the test result indicated the presence of heroin.

b. On September 11, 2020, Metro Agents Tom Knaus and Donald Vandervest met with CS #1, in order to conduct a Oxycodone pill, Suboxone, and heroin (suspected fentanyl) buy in Racine, WI. The CS called Ronnie MITCHELL at **(262) 321-4730** (the "Target Cell Phone") and arranged to purchase the Oxycodone pills and heroin (suspected fentanyl) from MITCHELL. Agents Knaus and Vandervest drove CS #1 to Case Avenue and DeKoven Avenue in Racine, WI, the buy location. While the Agents and CS #1 waited for MITCHELL to arrive, the CS had phone contact with MITCHELL at 262-321-4730. MITCHELL told CS #1 that he was waiting to obtain the Oxycodone pills. At approximately 12:32 p.m., a white Buick arrived at the buy location and CS #1 entered the vehicle. CS #1 stated Devereaux PATTON was the driver of the vehicle and sole occupant. CS #1 saw PATTON was on a video call with MITCHELL and CS #1 could see and hear MITCHELL talking. According to CS #1, MITCHELL was mad that

6

his pill source was not cooperating and wanted CS #1 to keep his/her "guy" in town until the pills arrived. The CS gave PATTON $850 of pre-recorded Metro MDU and PATTON gave CS #1 the heroin (suspected fentanyl) and 50 Suboxone strips. TFO Steve Deschler weighed the heroin (suspected fentanyl) and it weighed approximately 3.6 grams. TFO Jessie Lewis tested a small sample of the suspected fentanyl utilizing a NARK II #33 test kit and the test result indicated the presence of heroin. TFO Lewis counted 50 individually packaged Suboxone sublingual strips.

c. On September 30, 2020, Metro Drug Unit Agent Thomas Knaus met with CS #1, in order to conduct a purchase of 25 30 mg Oxycodone pills and approximately 3.5 grams of heroin. The CS made a recorded call to Ronnie MITCHELL at **(262) 321-4730** (the "Target Cell Phone") and arranged to purchase the Oxycodone pills and heroin. The CS received another phone call from Ronnie MITCHELL at **(262) 321-4730** (the "Target Cell Phone") and MITCHELL instructed the CS to go to Grand Avenue and DeKoven Avenue in Racine, WI. At approximately 2:49 p.m., a maroon Chevrolet Trailblazer displaying Wisconsin registration ML5408 parked in the 1900 block of Grand Avenue and across from the undercover vehicle. CS #1 exited the undercover vehicle and walked to the vehicle's driver's door. The CS met with Menachin O. BROWN, the driver of the Chevrolet Trailblazer. The CS gave BROWN $1100 MDU OAF and purchased the Oxycodone pills and heroin from BROWN. CS

7

#1 also received a sample of crack cocaine from BROWN. Agent Knaus utilized a NARK II field test kit on a small portion of the heroin and received a positive reaction for the presence of heroin.

d. On October 15, 2020, Metro Drug Unit Agent Thomas Knaus met with CS #1, in order to conduct a purchase of 50 30 mg Oxycodone pills and approximately 3.5 grams of heroin. The CS made a recorded call to Ronnie MITCHELL at **(262) 321-4730** (the "Target Cell Phone") and arranged to purchase the Oxycodone pills and heroin. Ronnie MITCHELL instructed CS #1 to meet at Grand Avenue and DeKoven Avenue in Racine, WI. Agent Donald Vandervest and Agent Knaus drove the CS to the buy location and parked behind a blue Hyndai Sonata displaying temporary Illinois registration 515V239. CS #1 exited the undercover vehicle and sat in the rear passenger seat of the blue Hyundai Sonata. CS #1 stated Ronnie MITCHELL was driving the vehicle and a black male was seated in the front passenger seat. CS #1 gave $1900 MDU OAF to the front seat passenger and he handed the CS a pink cardboard box which contained the Oxycodone pills and heroin. TFO Deschler weighed the suspected heroin and it weighed approximately 3.5 grams. TFO Steve Deschler utilized a NARK II field test kit on a small portion of the heroin and received a positive reaction for the presence of fentanyl.

e. No subscriber name or address is listed for **(262) 321-4730** (the "Target Cell Phone"). The primary user for **(262) 321-4730** (the "Target Cell

Phone") is MITCHELL DTO member Ronnie MITCHELL. Probable cause to collect location information for **(262) 321-4730** (the "Target Cell Phone") for the next 45 days is based on CS #1 utilizing phone number (**262) 321-4730**, (the "Target Cell Phone"), to arrange the purchase of controlled substances from numerous members of the MITCHELL DTO.

12.      The Milwaukee DEA District Office and the Racine County Sheriff Office Metro Drug Unit is investigating the Ronnie MITCHELL DTO for distribution of fentanyl, heroin, crack cocaine, Oxycodone pills, ecstasy, and Suboxone strips. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; pen register trap and trace, and telephone toll data; controlled buys of drugs, controlled meetings with targets, recorded telephone calls with targets, and controlled payments of money; physical surveillance, and court-authorized monitoring of the DTO's drug cellular telephone, **(262) 321-4730** (the "Target Cell Phone"), used by DTO members to facilitate their drug trafficking activities with each other and their associates.

13.      On numerous dates between January 2020 and September 2020, CS #1 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members.  For several reasons, case agents believe CS #1 is reliable and credible. First, CS #1 has been providing information since January 2020. Second, CS #1's information is substantially against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS-1 was utilized, and/or substantial portions of CS #1's information have been corroborated through independent investigation, including recorded conversations, surveillance, information

9

from other confidential sources, and subsequent controlled buys made by case agents. For example, CS #1 informed case agents that CS #1 used **(262) 321-4730** (the "Target Cell Phone"), to contact MITCHELL DTO members, which call detail records confirm. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 1 has two 2003 misdemeanor conviction of resisting or obstructing an officer, a 2005 misdemeanor conviction for possess drug paraphernalia, a 2005 misdemeanor conviction for criminal trespass to dwelling, a 2005 misdemeanor conviction for criminal damage to property, a 2005 misdemeanor conviction for carrying a concealed weapon, a 2010 misdemeanor conviction for possess drug paraphernalia, a 2017 non-criminal conviction for prostitution – nonmarital sexual intercourse, and a 2018 non-criminal conviction for escort license required.  CS #1 is cooperating for financial compensation. For these reasons, I consider CS #1 to be reliable.

14.     On numerous dates between January 2020 and July 2020, CS #2 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members. For several reasons, case agents believe CS #2 is reliable and credible.  First, CS #2 has been providing information since January 2020.  Second, CS #2's information is substantially against CS #2's penal interest. Third, the information provided by CS #2 is consistent with evidence obtained elsewhere in this investigation where CS #2 was utilized, and/or substantial portions of CS #2's information have been corroborated through independent investigation, including recorded conversations, surveillance, information from other confidential sources, and subsequent controlled buys mde by case agents. For example, CS #2 informed case agents that CS #2 used the MITCHELL DTO drug phone numbers of (224) 717-6253 and (262) 308-3368 to contact MITCHELL DTO members, which call detail records

10

confirm. Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 2 has a 2016 non-criminal arrest from retail theft. CS #2 is cooperating for financial compensation. For these reasons, I consider CS #2 to be reliable.

15.     On numerous dates between December 2019 and July 2020, CS #3 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members. For several reasons, case agents believe CS #3 is reliable and credible. First, CS #3 has been providing information since December 2019. Second, CS #3's information is substantially against CS #3's penal interest. Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was utilized, and/or substantial portions of CS #3's information have been corroborated through independent investigation, including recorded conversations, surveillance, information from other confidential sources, and subsequent controlled buys made by case agents. For example, CS #3 informed case agents that CS #3 used the MITCHELL DTO drug phone numbers of (224) 717-6253 and (262) 308-3368 to contact MITCHELL DTO members, which call detail records confirm. Finally, CS #3 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 3 has a 2009 misdemeanor conviction for domestic abuse restraining order violation, a 2016 misdemeanor conviction for retail theft – intent conceal, a 2016 misdeneanor conviction for bail jumping – misdemeanor, and a 2016 misdemeanor conviction for hit and run – habitual criminality. CS #3 is cooperating for financial compensation. For these reasons, I consider CS #3 to be reliable.

11

16.     Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded.

17.     In my training and experience, I have learned that Cellco Partnership DBA Verizon Wireless is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower

12

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.     Based on my training and experience, I know that Cellco Partnership DBA Verizon Wireless can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership DBA Verizon Wireless's network or with such other reference points as may be reasonably available.

19.      Based on my training and experience, I know that Cellco Partnership DBA Verizon Wireless can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as

13

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

22.     I further request that the Court direct Cellco Partnership DBA Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless for a time period of 45 days from the date the warrant is signed.  I also request that the Court direct Cellco Partnership DBA Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Cellco Partnership DBA Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership DBA Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate Cellco Partnership DBA Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

23.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

14

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(262) 321-4730**, with International Mobile Equipment Identity 352022072828963 and International Mobile Subscriber Identity 311480498110837 (the "Target Cell Phone"), whose wireless service provider is Cellco Partnership DBA Verizon Wireless, a company headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless .

# <u>ATTACHMENT B</u>

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless is required to disclose the Location Information to the government. In addition, Cellco Partnership DBA Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Cellco Partnership DBA Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership DBA Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Cellco Partnership DBA Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).